UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 130, ET AL | * | CIVIL ACTION |
| VERSUS | * | NO: 05-6629 |
| BE&K GOVERNMENT GROUP, INC., ET AL | * | SECTION: "D"(5) |

**ORDER AND REASONS**

Before the court is the **"Motion for Summary Judgment"** filed by Defendants, BE&K Government Group, Inc. and Mark Granus.  Plaintiffs filed a memorandum in opposition.  The motion, set for hearing on Wednesday, February 14, 2007, is before the court on briefs, without oral argument.  Now, having considered the memoranda of counsel, the record, and the applicable law, the court finds that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.[1]

---

[1]    Defendants' Motion for Summary Judgment was initially set for hearing on November 22, 2006, but that hearing was continued, on Plaintiff's motion, to allow Plaintiffs to conduct whatever discovery they believed was necessary to oppose Defendants' Motion for Summary Judgment.  (*See* Order, Doc.

## I.  Background

In early September 2005, in the aftermath of Hurricane Katrina, Defendant BE&K Government Group, Inc., was awarded contract work to rebuild the Naval Air Station in Belle Chasse, Louisiana.  In turn, BE&K subcontracted some of that work to Knight Enterprises to provide various electrical services for the recovery work.  Knight Enterprises supplied its own employees, including the individual plaintiffs in this action.  Knight Enterprises was party to a collective bargaining agreement with the International Brotherhood of Electrical Workers Local 130 (Union), also a Plaintiff in this matter.  According to Plaintiffs, the Union "serves as the statutory and contractually established exclusive bargaining representative for Knight's electricians."[2]

Plaintiffs initially alleged that approximately three weeks into Knight Enterprise's work at the base, BE&K "abruptly cancelled its contract with Knight" and BE&K informed Knight that its own workers would be taking over the job.[3]  Claiming that the individual Plaintiffs "were replaced by aliens who are not entitled to lawfully reside or work in the United States," Plaintiffs

No. 56).

[2]    *See* initial state-court filed Petition, ¶9.

[3]    *Id*. at ¶¶16-17.

2

ultimately filed their state-court Petition against BE&K alleging a single cause of action under LSA-R.S. 23:992.[4]   That statute provides:

> **Employment of certain aliens; prohibition**
>
> No person, either for himself or on behalf of another, shall employ, hire, recruit, or refer, for private or public employment within the state, an alien who is not entitled to lawfully reside or work in the United States.

LSA-R.S. 23:992.

Defendant BE&K timely removed the matter (from the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana) to this court asserting jurisdiction based on both federal question and diversity.  Plaintiffs then moved the court to remand the matter to state court, but the court found that it had diversity jurisdiction and denied Plaintiffs' Motion to Remand. (*See* Order and Reasons, Docs. Nos. 10 & 21).

Plaintiffs subsequently filed their "First Amended Complaint" naming Mark Granus, the alleged BE&K Project Manager, as an additional Defendant, and adding the following allegations:

17.

> A substantial number of the electricians were African-American.  The BE&K Project Manager, Mark Granus, complained that "his Mexicans" were preferable to the "niggers" referred by

---

[4]   *Id*. at ¶¶20-21.

3

> Local 130.  Granus instructed Knight to "get
> these niggers out of here."  Union members
> complained about the racial slurs.  In turn,
> Al Knight [President of Knight Enterprises]
> complained to Susan Wasley and Bill Rigby of
> BE&K about the racial discrimination and
> harassment.
>
> 18.
>
> After Mr. Knight's complaints about racial
> discrimination and harassment, on or about
> September 30, 2005, BE&K abruptly caused
> Knight to cancel its contract with Local 130
> and terminate its employment relationship with
> plaintiffs.  This action was motivated by
> Granus' racial animus and retaliatory motive.

(*See* First Amended Complaint, Doc. No. 28 at ¶¶17-18).

In addition to their previously asserted cause of action under LSA-R.S. 23:992, Plaintiffs also asserted the following three causes of action: (1) tortious interference with contractual relations; (2) malicious interference with business relations under Louisiana Civil Code Article 2315; and (3) racial discrimination in violation of 42 U.S.C. §1981. (*See* First Amended Complaint, Doc. No. 28 at ¶¶25-38).

Plaintiffs also filed a Second Amended Complaint and a Third Amended Complaint, for the purpose of adding more individual Plaintiffs. (*See* Second Amended Complaint and Third Amended Complaint, Docs. Nos. 60 & 67).

In their prayer for relief, Plaintiffs collectively seek the following relief and damages:

  a. full back pay, including all wages, salaries, fringe benefits, and related employment benefits lost as a result of Defendants' alleged unlawful employment practices;

  b. legal interest running from the date of Defendants' alleged unlawful employment practices on all monetary damages due and owing;

  c. declaratory relief to establish Defendants' alleged unlawful employment practices;

  d. a permanent injunction restraining Defendants from employing, hiring, recruiting or referring for work aliens who are not entitled to lawfully reside or work in the United States within Louisiana and restraining Defendants from engaging in racial discrimination;

  e. attorney's fees, expert fees, and costs for prosecution of this action; and

  g. any other equitable relief the Court deems necessary or appropriate.

(*See* Plaintiffs' Third Amended Complaint, Doc. No. 67, p. 9).

  In the instant Motion for Summary Judgment, Defendants seek dismissal of all four of Plaintiffs' claims. When Defendants initially filed this motion, the Plaintiffs consisted of Local 130 of the International Brotherhood of Electrical Workers (the Union) and 20 individuals. In their Second and Third Amended Complaints, Plaintiffs added 61 individual Plaintiffs. The court finds that Defendants' motion applies to all Plaintiffs.

## II.  Legal Analysis

### A.  Plaintiffs' claim under LSA-R.S. 23:992

Again, LSA-R.S. 23:992, which provides:

> **Employment of certain aliens; prohibition**
>
> No person, either for himself or on behalf of another, shall employ, hire, recruit, or refer, for private or public employment within the state, an alien who is not entitled to lawfully reside or work in the United States.

LSA-R.S. 23:992.

In this case, Plaintiffs claim that BE&K violated this statute by replacing the individual plaintiffs with illegal workers.  The individual plaintiffs were employed by Knight Enterprises as electricians.  (Third Amended Complaint at ¶13).  The United States Immigration and Enforcement (ICE) determined that two individuals, Arturo Garcia and Corina Olivas, whom BE&K hired to work on the Belle Chasse project, had presented BE&K with fraudulent documents. However, these individuals were hired respectively as a carpenter and laborer; neither worked as an electrician.  (Gray Aff. at ¶7).

Thus, the court concludes that Plaintiffs lack standing to maintain a cause of action under LSA-R.S. 23:992, because they cannot prove an injury in fact relating to BE&K's hiring of the non-electricians, Garcia and Olivas.  Further, there is no evidence that BE&K's hiring of the two non-electricians, Garcia or Olivas, had any causal connection with BE&K's decision to terminate its

6

subcontract with Knight Enterprises. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992)(for a plaintiff to have standing, plaintiff must have suffered an injury in fact and there must be a causal connection between the injury and conduct complained of).

With their opposition memorandum, Plaintiffs submitted the Affidavit of Michael Moran who attested that "[d]uring the entire time I worked as the general foreman for Knight Enterprises on-site, Hispanic workers were being bused in to work as electricians." (Moran Aff. at ¶ 13). Plaintiffs also submitted the Affidavit of Todd Galle who similarly attested that "[d]uring the entire time I worked as the Superintendent for Knight Enterprises, Hispanic workers were being bussed in to work as electricians." (Galle Aff. at ¶ 9). However, the court finds that such statement are conclusory in the absence of evidence showing that such unidentified "Hispanic workers" were not legally entitled to work in the United States, or that they were even BE&K employees. Indeed, in response to BE&K's statement of uncontested material facts, Plaintiffs "admitted" that ICE found no electricians who were not authorized to work in the united States. (*See* Plaintiffs' Response to Statement of Material Facts, ¶7).

**B.  Plaintiffs' Claim under 42 U.S.C. §1981**

Under their §1981 claim, Plaintiffs allege:

33.

A substantial number of the electricians are
African-American, and a number of plaintiffs
are African-American.

34.

Mark Granus and BE&K Government Group, Inc.
had an intent to discriminate on the basis of
race.

35.

Defendant Granus' and BE&K's racial
discrimination caused the termination of
plaintiffs' relationship [with] Knight and
with Local 130's Agreement with Knight.

36.

Plaintiffs have suffered damage as a result of
Defendants' racial discrimination.

37.

**Plaintiffs were intended third-party
beneficiaries of Knight's contract with BE&K.**

38.

This contract was terminated by BE&K and
Granus because of the race of plaintiffs, and
plaintiffs have suffered damage.

(*see* Third Amended Complaint, ¶¶ 33-38, emphasis added).

42 U.S.C. §1981, entitled "Equal rights under law," provides:

(a) Statement of equal rights

All persons within the jurisdiction of the
United States shall have the same right in
every State and Territory to make and enforce
contracts, to sue, be parties, give evidence,

8

and to the full and equal benefit of all laws
and proceedings for the security of persons
and property as is enjoyed by white citizens,
and shall be subject to like punishment,
pains, penalties, taxes, licenses, and
exactions of every kind, and to no other.

(b)   "Make and enforce contracts" defined

For purposes of this section, the term "make
and enforce contracts" includes making,
performance, modification, and termination of
contracts, and the enjoyment of all benefits,
privileges, terms, and conditions of the
contractual relationship.

(c)   Protection against impairment

The rights protected by this section are
protected against impairment by
nongovernmental discrimination and impairment
under color of State law.

42 U.S.C. §1981.

In *Domino's Pizza, Inc. v. McDonald*, 126 S.Ct. 1246 (2006),

the Supreme Court explained that:

Section 1981 offers relief when racial
discrimination blocks the creation of a
contractual relationship, as well as when
racial discrimination impairs an existing
contractual relationship, so long as the
plaintiff has or would have rights under the
existing or proposed contractual relationship.

*Id.* at 1250.

However, the Court noted that it was not necessarily requiring

that the plaintiff be a party to the contract, because there is a

"possibility that a third-party beneficiary of a contract may have

9

rights under §1981." *Id*. at fn. 3.

Here, Plaintiffs did not have a contract with BE&K or Mark Granus, but they make a §1981 claim against these Defendants alleging that BE&K terminated its contract *with Knight Enterprises* for racial reasons and they suffered damage because Plaintiffs were third party beneficiaries to this contract.

Pursuant to Louisiana Civil Code Article 1978:

> A contracting party may stipulate a benefit for a third person called a third-party beneficiary.
>
> Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.

La.Civ. Code Art. 1978.

Under Louisiana law, such a contract for the benefit of a third party is commonly referred to as *stipulation pour autrui*.[5] *Joseph v. Hospital Service Dist. No. 2*, 939 So.2d 1206, 1211 (La. 2006)(citation omitted);[6] *see also Chevron U.S.A., Inc. v.*

---

[5]    As noted by the Louisiana Supreme Court, "BLACK'S LAW DICTIONARY 1427 (7th ed. 1999), refers to stipulation *pour autrui* as a French civil law term meaning a stipulation "for other persons." *Joseph v. Hospital Service Dist. No. 2*, 939 So.2d 1206, 1211 n. 5 (La. 2006).

[6]    In their opposition memorandum, Plaintiffs cite the lower appellate court's decision, *Joseph v. Hospital Service Dist. No. 2*, 923 So.2d 27 (La. App. 1st Cir. 2005), for the proposition that this court "held that a services (*sic*) contract between a hospital and a doctors' incorporated practice group was for the benefit of the individual doctors." (*See* Plaintiffs' Opp. at 9). However, in *Joseph v. Hospital Service Dist. No. 2*, 939 So.2d 1206 (La. 2006), the Louisiana Supreme Court **REVERSED** the 1st

*Traillour Oil Co.*, 987 F.2d 1138, 1147 (5th Cir. 1993).

While the Louisiana Civil Code recognizes that a third party beneficiary contract can exist, the "code provides no analytic framework for determining whether a third party beneficiary contract exists." *Joseph*, 939 So.2d at 1211.  However, in *Joseph*, the Louisiana Supreme Court instructed that its study of the jurisprudence revealed the following three criteria for determining whether contracting parties have provided a benefit for a third party:

    (1)  the stipulation for a third party is manifestly
         clear;

    (2)  there is certainty as to the benefit provided the
         third party; and

    (3)  the benefit is not a mere incident of the contract
         between the promisor and the promisee.

*Joseph*, 939 So.2d at 1212.

The Louisiana Supreme Court then discussed each of these factors in more detail:

> The **most basic requirement [the first factor]**
> of a stipulation *pour autrui* is that the
> contract manifest a clear intention to benefit
> the third party; absent such a clear

---

Circuit's decision and found that the individual doctors were **not** third party beneficiaries of the service agreement between the hospital and medical corporation with which the doctors were affiliated.

manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof.  A stipulation *pour autrui* is never presumed.  The party claiming the benefit bears the proof.

The **second criteria**, certainty as to the benefit provided, is a corollary of the requirement of a manifestly clear stipulation. "To create a legal obligation enforceable by the beneficiary there must be certainty as to the benefit to accrue to the beneficiary."

In connection with the **third requirement** that the benefit cannot be a mere incident of the contract, we find pertinent the discussion of "incidental benefits" by professor Smith, 11 Tul.L.Rev.  28:  "[n]ot every promise, performance of which may be advantageous to a third person, will create in him an actionable right.  The problem is to separate the cases where an advantage has been stipulated from those where the advantage relied upon is merely an incident of the contract between the parties."

*Joseph,* 939 So.2d at 1212-13 (emphasis added and citations

omitted); *see also Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987

F.2d at 1147.[7]

_____

[7]     In *Traillour*, the Fifth Circuit instructed that a *stipulation pour autrui* "is never presumed.  Rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be manifestly clear." *Traillour*, 987 F.2d at 1147 (citation omitted).

Further, the Fifth Circuit explained:

Louisiana law is settled that for there to be a *stipulation pour autrui* there must be not only a third-party advantage, but the benefit derived from the contract by the third party may not merely be incidental to the contract.  Rather, **the third-party benefit must form the condition or consideration of the contract in order for it to be a** *stipulation pour*

The *Joseph* Court noted that:

> The Restatement of the Law of Contracts distinguishes **intended beneficiaries** who have legal rights from **incidental beneficiaries** who have no legal rights to enforce the contract. Restatement (Second) of Contracts, Introductory Note to Chapter 14 at 439 and §302 (1979).

*Joseph*, 939 So. 2d at 1213, n. 8 (emphasis added).

In this matter, Kellogg, Brown & Root, Inc. awarded BE&K a contract for post-Katrina recovery work at the naval Air Station in Belle Chasse, Louisiana. (*See* Affidavit of Ken Gray, Director of Project Controls for BE&K, Defendants' Ex. 1, ¶ 3). BE&K in turn sub-contracted with multiple contractors, including Knight Enterprises. (*Id*. at ¶3; *see also* portions of Subcontract between BE&K and Knight Enterprises, attached to Gray Affidavit as Exhibit C).

In applying the *Joseph* factors to this subcontract to determine whether Plaintiffs were third party beneficiaries of the subcontract BE&K and Knight Enterprises, the court finds that:

(1) there has been no showing that the subcontract between BE&K and Knight Enterprises established a

---

*autrui*. Moreover, a *stipulation pour autrui* will be found only when the **contract** *clearly* **contemplates the benefit to the third person as its condition or consideration**.

*Id*. (emphasis added).

13

stipulation for the Plaintiffs in a manifestly clear manner;

(2) there has been no showing of a certainty as to the benefit provided the Plaintiffs; and

(3) there has been no showing that the benefit Plaintiffs received (i.e., employment by Knight Enterprises) is more than a mere incident of the subcontract between the BE&K and Knight Enterprises.

Thus, the court concludes that there is no genuine issue of material fact, and Plaintiffs have failed to establish that the subcontract between BE&K and Knight Enterprises was a stipulation *pour autrui*, and that they were third party beneficiaries of this subcontract. *Compare Joseph*, 939 So.2d at 1213-15 (contract between a hospital and a medical corporation did not create a stipulation *pour autrui* in favor of the individual doctors affiliated with the medical corporation); *Kane Enterprises v. MacGregor (USA) Inc.,* 322 F.3d 371, 375 (5th Cir. 2003)(sub-subcontractor was not third-party beneficiary, under Louisiana law, to contract between the Navy and general contractor); *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.,* 48 F.3d 927 (5th Cir. 1995)(no genuine issue of material fact; plaintiff subcontractors were not third party beneficiaries of drilling contract); and

*Traillour*, 987 F.2d at 1147-48 (no clear manifestation of an intent to benefit third party).

## C.  **Plaintiffs' claim for tortious interference with contractual relations**

In asserting their claim for tortious interference with contractual relations, Plaintiffs allege:

> 25.
>
> Plaintiffs' employment by Knight was governed by [a collective bargaining agreement].
>
> 26.
>
> Mark Granus and BE&K were aware of the [collective bargaining agreement] between Local 130 and Knight.
>
> 27.
>
> Mark Granus and BE&K intentionally caused Knight to cancel its [collective bargaining agreement] with Local 130 and its employment relationship with the plaintiffs.
>
> 28.
>
> Mark Granus and BE&K had no justification for causing the cancellation of Local 130's [collective bargaining agreement] with Knight.
>
> 29.
>
> Plaintiffs have suffered damages as a result of the cancellation of the [collective bargaining agreement] between Knight and Local 130.

(*See* Third Amended Complaint at ¶¶25-29).

Historically, a cause of action for tortious interference with a contract was not available in Louisiana.  However, in *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989), the Louisiana Supreme Court found that prior jurisprudence "that flatly and without good reason deprives an innocent person of any remedy for damage to his contract right caused intentionally and improperly by a **corporate official** is discordant with the fundamental civil law principle that obliges a person to repair damage caused another by his fault.  La.Civ.Code art 2315." *Id*. at 233-34 (emphasis added).

And while the *Spurney* Court went on to recognize "a **corporate officer's duty** to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person," it did not intend "to adopt whole and undigested the fully expanded common law doctrine of interference with contract..." *Id*. at 234 (emphasis added).  The Court then set forth the following elements for an action against a **corporate officer** for intentional and unjustified interference with contractual relations:

>  (1)  the existence of a contract or a legally protected interest between the plaintiff and the corporation;
>
>  (2)  the corporate officer's knowledge of the contract;
>
>  (3)  the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible

or more burdensome; and

    (4) absence of justification on the part of the officer;

    (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La. 1989).

Numerous cases in the Fifth Circuit and various Louisiana courts of appeals since *Spurney* have uniformly recognized the narrowness of Louisiana's tortious interference with contract action. *See Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey* 183 F.3d 453, 457 (5th Cir. 1999) and cases cited therein. As one court explained, in *Spurney*, "an exception to the general prohibition against an action for interference with contract was found because the court recognized a duty on the part of a corporate officer to a third person having a contractual relationship with the corporation to which the officer owed a fiduciary duty." *Spears v. American Legion Hospital*, 780 So.2d 493, 497 (La. App. 3rd Cir. 2001).

Here, while Plaintiffs allege Defendants (Granus and BE&K) interfered with the collective bargaining agreement between Local 130 and Knight Enterprises, and caused Knight to cancel this agreement, Plaintiffs do not address Defendants' summary judgment argument for dismissal of Plaintiffs' claim for tortious

interference of contractual relations.  Indeed, Plaintiffs admit that Mark Granus was not a corporate officer of BE&K or Knight Enterprises, and neither Plaintiffs nor Local 130 had a contractual relationship with BE&K.  (*See* Plaintiffs' Response to Statement of Material Facts at ¶¶ 3 and 4, citing Gray Affidavit at ¶¶ 4 and 5).  Accordingly, since Plaintiffs' allegations do not fall within the narrow parameters of Louisiana's tortious interference with contract cause of action, Defendants are entitled to summary judgment dismissal of Plaintiff's claim for tortious interference of contractual relations.

## D. Plaintiffs' claim for malicious interference with business relations under Louisiana Civil Code Article 2315

In asserting their claim for malicious interference with business relations, Plaintiffs allege:

30.

Mark Granus and BE&K maliciously and improperly interfered with plaintiffs' business relations with Knight solely for racially motivated reasons, and caused them damage.

31.

Plaintiffs are protected from malicious and wanton interference with their business relations.  La. Civ. Code art 2315.

32.

Mark Granus and BE&K's interference with

18

> Plaintiffs' business relations with Knight was
> not designed to protect legitimate interests
> of Granus or BE&K.

(*See* Third Amended Complaint at ¶¶30-32).

Louisiana courts have long recognized a cause of action for tortious interference with business. *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981); *Graham v. St. Charles St. Railroad Co.*, 47 La. Ann. 1656, 18 So. 707 (1895).

In *Graham*, the Louisiana Supreme Court recognized that such a cause of action arises under Louisiana Civil Code Article 2315. *Graham*, 18 So. 707.  Further, a cause of action for tortious interference with business is different from a cause of action for tortious interference of a contract. *Endotech USA v. Biocompatibles Inter'l PLC*, 2000 WL 1594086 *13 (E.D.La. 2000)(Duval, J.).  Unlike the contractual interference cause of action, a cause of action for tortious interference with business is not restricted to officers of corporations. *Id*.

"An individual, regardless of his motive, has an absolute right to refuse to deal with another." *Dussouy*, 660 F.2d at 601. "The right to influence others not to deal, however, is not as broad." *Id*.  Louisiana law protects the businessman from "'malicious and wanton interference,' permitting only interferences designed to protect a legitimate interest of the actor." *Id*.

(citations omitted).

The plaintiff in a tortious interference with business action must show by a preponderance of the evidence that the defendant influenced others not to deal with the plaintiff. *Ustica Enterprises, Inc. v.* Costello, 434 So.2d 137, 140 (La. App. 5th Cir. 1983); McCoin *v. McGehee*, 498 So.2d 272, 274 (La. App. 1st Cir. 1986). It is not sufficient for plaintiff to allege conduct which merely has an effect on his business relationships or economic opportunities absent allegations that a defendant maliciously attempted to prevent a third-party from dealing with the plaintiff. *Nowling v. Aero Servs. Int'l, Inc.,* 752 F.Supp. 1304, 1312 n. 7 (E.D.La. 1990)(Feldman, J.); *Ustica*, 434 So.2d at 140.

Further, the Louisiana Court of Appeals for the Fourth Circuit has stated that:

> Although this cause of action has an ancient vintage, Louisiana jurisprudence has viewed it with disfavor. Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show that the Defendant acted with actual malice. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 602 (5th Cir. 1981). "Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings.

*JCD Marketing v. Bass Hotels and Resorts*, *Inc.*, 812 So.2d 834, 841

(La. App. 4th Cir. 2002).[8]

Here, Plaintiffs allege that Mark Granus and BE&K maliciously and improperly interfered with plaintiffs' business relations with Knight solely for racially motivated reasons.   (Third Amended Complaint at ¶30).   However, the summary judgment evidence establishes that under Section 14 of the Subcontract between BE&K and Knight Enterprises, BE&K "may at any time for its convenience and without cause terminate all or any portion of the Work to be performed hereunder."   (*See* Gray Affidavit at ¶9 and Exhibit C, Subcontract, Clause 14.0, attached thereto).

According to Ken Gray, the BE&K Director of Project Controls:

> By late September 2005, BE&K was nearing completion of the original scope of work to it by KBR and decided to reduce the number of workers on site.  On September 30, 2005, BE&K notified Knight Enterprises that its contract would be terminated effective October 1, 2005. A true and correct copy of correspondence from BE&K to Knight Enterprises terminating the subcontract is attached hereto as Exhibit A. ...  [T]his decision was not contested by Knight Enterprises.  A true and correct copy of correspondence from Knight Enterprises to BE&K confirming the termination of the subcontract is attached hereto as Exhibit B.

(*See* Gray Affidavit, at ¶9 and Exhibits A & B attached thereto).

Al Knight (President of Knight Enterprises) testified that he

---

[8]    Some courts refer to a claim for tortious interference with business as a claim for "invasion of business interest."   *Muslow v. A.G. Edwards & Sons, Inc.*, 509 So.2d 1012, 1020 (La. App. 2nd Cir. 1987).

did not dispute that "BE&K had the right to terminate the contract they had with Knight Enterprises when they did." (Knight Dep. at 74-75). Further, Knight testified that Bill Rigby (Vice President of BE&K) had asked him to write a letter responding to BE&K's decision to terminate Knight Enterprises. (*Id*. at 88-89). Knight stated that he was sincere when he wrote Rigby the letter (attached as Exhibit 10 to Knight Deposition) in which Knight stated:

> Regarding the BE&K release letter to Knight Enterprises dated September 30, 2005, we offer the following response:
>
> We fully understand the reason why Knight Enterprises was released from the previous task force, providing electrical workers for the temporary tent camp facility, and agree with BE&K's decision referenced in the letter.
>
> We sincerely appreciate the opportunity extended to us by BE&K Government Group. We will do everything within our control to successfully achieve future directives BE&K gives to us. In the short time we have been working for you I have had the opportunity to work with some of your very professional staff. They have assisted us in everyway possible. Thanks.
>
> We look forward to a successful relationship and please call us with any requirements you may have.

(*See* Knight Dep. at 88-89 and Knight Letter dated October 8, 2005, attached as Exhibit 10 to Knight Deposition).

Plaintiffs have offered no summary judgment type evidence to establish or at least raise a genuine issue of material fact that

Defendants maliciously or improperly caused Knight Enterprises to stop employing Plaintiffs for additional work after BE&K terminated its subcontract with Knight Enterprises.   The fact that BE&K terminated its subcontract with Knight Enterprises (which BE&K had the contractual right to do so) does not show that Defendants improperly influenced Knight Enterprises to fire Plaintiffs on this job or not employ them on future jobs.

Plaintiffs submitted the Affidavit of Michael Moran, the general foreman for Knight Enterprises, who attested in part that Defendant Granus asked him to lay off all the African-American electricians, and that when Moran informed Granus that he needed cause to fire any electrician, Granus said "Tomorrow I will go on an old-fashioned Alabama porch monkey hunt." (*See* Moran Affidavit at ¶ 15).  Plaintiffs also submitted the Affidavit of Todd Galle, the Superintendent for Knight Enterprises, who similarly testified. (*See* Galle Affidavit at ¶ 11).   Galle also attested that he informed Al Knight and BE&K's Rigby of Granus' racist comments. (*See* Galle Affidavit at ¶ 14).  However, neither the testimony of Moran or the testimony of Galle demonstrate that any racial remarks by Granus improperly or maliciously influenced Knight Enterprises to stop dealing with Plaintiffs.

Indeed, while Moran attests that Defendant Granus made racial remarks, Moran also attests that he needed cause to fire any

23

electrician, and Plaintiffs admit in their opposition that "Moran refused to terminate the African-American electricians." (Plaintiffs' opp. at 11).

Accordingly, Defendants are entitled to summary judgment dismissal of Plaintiffs' claims for malicious interference with business relations.

### III.  Conclusion

For reasons set forth above,

**IT IS ORDERED** that Defendants' **"Motion for Summary Judgment"** be and is hereby **GRANTED**, dismissing all of Plaintiffs' claims against Defendants.

New Orleans, Louisiana, this **12th** day of **March, 2007**.


_____
A.J. MCNAMARA
UNITED STATES DISTRICT JUDGE